## RITTENHOUSE v. BELL.

### Opinion delivered January 27, 1913.

1. .PRINCIPAL AND AGENT—PERSONAL LIABILITY OF AGENT—INSTRUCTIONS—SPECIFIC OBJECTIONS.—An objection to an instruction that an agent is personally liable on a contract that he makes for his principal and which contract is not legally binding on his principal, must be specific, not general. (Page 320.)

2. WITNESS—EVIDENCE—TESTIMONY GIVEN AT ANOTHER TRIAL.—B. sued a corporation in the Federal court for damages for breach of a contract made with its agent R., but finding that R. had no authority to make the contract B. took a nonsuit, and sued R. in the State court. *Held*, when R. reads in evidence in the State court portions of B.'s testimony in the Federal court for the purpose of contradicting B., R. can not be heard to complain when B. reads in evidence other portions of his testimony given in the Federal court which appear to reconcile the contradictions. (Page 319.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*Coleman & Lewis,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

SMITH, J.   This suit was instituted in the Pulaski Circuit Court by the appellee Bell against appellant Rittenhouse.   It was brought on the theory that Rittenhouse, as vice president of the Midland Land & Development Company, had undertaken to make a contract for the sale of certain lands, described in the complaint, amounting to about sixteen thousand acres; that Bell procured a purchaser upon the terms agreed, but when the purchaser was presented the Midland Land & Development Company refused to carry out the contract, which defendant had made on its behalf, and repudiated his authority to make same.

The complaint alleged that the defendant undertook, on behalf of the company, to enter into a contract with the plaintiff by which he authorized him to sell the lands upon the following terms:   "Two thousand dollars to be paid as earnest money at the time of the sale, and to be forfeited unless the purchaser complied with the terms of the contract; but to be credited as a part of the purchase money in the event the contract was carried out; nine thousand dollars to be paid on June 1, 1911; eleven thousand dollars to be paid on December 1, 1911; and twenty thousand dollars to be paid on the first day of December of each year thereafter, until the entire debt was paid; the deferred payments to bear interest at the rate of 6 per cent. per annum; the land to be deeded to the purchaser, who was to execute a deed of trust upon it to secure the balance of the purchase money; the purchaser to have the right to sell the land in parcels, putting up the purchase money notes in the hands of the trustee, and when as much as $3 per acre was paid on any tract, or tracts of eighty acres or more, the trustee was to release such tracts from the lien of the deed of trust, relying upon the purchase money notes as security for the balance due from said second purchaser. The price of said land was to be $6 per acre, of which the said Midland Land & Development Company was to pay fifty cents per acre to the plaintiff as his compensation for making said sale."

The answer denied all the material allegations of the complaint.

There was evidence, which tended to support the allegation of the complaint, and the plaintiff narrates four separate conversations in which he states that the terms of the sale were agreed upon, as recited in the complaint, and he says that altogether there were six such conversations. His statement is positive and unequivocal, and not only made a case for submission to the jury, but, if true, fully warranted a verdict in his favor. He was fully corroborated by one A. E. Weist, a real estate dealer from Indianapolis, Ind., and by one J. A. Ferguson, who was the prospective purchaser; and it is not denied that this evidence would support the verdict, if true; but it is earnestly insisted that it is not true; and that it is collusive.

The defendant, on the other hand, contended that the lands were priced at $6 per acre, one-third cash, balance on terms to be agreed upon, and that if sold upon these terms there was to have been a commission of fifty cents per acre cash, but that if less than one-third of the purchase price was paid in cash, the price should be $6 per acre net to the owners. Some telegrams and correspondence are offered in evidence, which unquestionably appear to substantiate this version of the agreement, but explanation is offered which still leaves the question one for the decision of the jury.

It was also contended, upon the part of defendant, that plaintiff was to become jointly interested with Mr. Ferguson, the prospective purchaser, and that this fact was unknown to the defendant, and there was a sharp conflict in the testimony on this point. But Mr. Ferguson testified that he met defendant by appointment for the purpose of closing the deal, upon the terms mentioned in the complaint, and that he was able and anxious to comply with those terms.

Ferguson further testified that he had had large experience in land sales, and that he desired to have a thorough understanding, and that accordingly, he stated

the terms upon which he expected to buy, and defendant admitted those were the terms upon which he had authorized plaintiff to sell. He also testified that he told defendant that plaintiff was "going to help handle this land and the fifty cents an acre commission goes in the deal," and that defendant assented to this use of the commission. He further testified that defendant there said he could not close the deal that day, and left without having done so, but later returned with Hilderbrand, who was the president of the corporation owning the land. That there was a general conversation, on different topics, for a while and nothing said about the land deal until defendant remarked, "I did not mean to convey the idea that I would sell this land for less than $6 net." That plaintiff then said: "Here's your letter, it states what you propose to do," and handed the letter to Hilderbrand, who read it and remarked, "Well, there are things that had better be said than written." Rittenhouse then declined to sell for less than $6 net, until he had heard from some Chicago people, who were prospective purchasers, but said that if Bell would put up $2,000 as earnest money, he thought he could shape a telegram to the Chicago people, which would throw them off the deal. That Bell stood upon his understanding of the contract and demanded its execution, and upon appellant's refusal to accede, the negotiations were broken off, and the conference ended, and the suit followed.

Mr. Hilderbrand does not deny making the expression attributed to him, but he offered an explanation which deprived it of any sinister import, but the jury evidently declined to credit the explanation.

This suit was first brought in the United States Circuit Court against the corporation, but upon its appearing there, that appellant had no authority to execute the contract sued upon, a nonsuit was taken, and this suit commenced against appellant individually. Appellant now contends, that he not only had no authority to offer a commission for a sale at $6 per acre with a payment of less than one-third cash, but that he did not make that

contract; but upon the contrary he says he did have the authority to offer a commission of fifty cents per acre for a sale at $6 with a third of the purchase price paid in cash, but that these were not the terms on which Ferguson offered to buy. But the proof was all directed to the establishment of the truth of this issue, and there was a sufficiency of legal evidence to support the jury's finding on that question.

Objection is made to the action of the trial court in permitting a portion of appellee's testimony at the trial in the Federal Court to be read in evidence, upon the ground that it is not permissible to bolster up the present testimony of a witness by showing that at some other time he made a statement, similar to the one to which the witness has just sworn. The correctness of this statement of the rule is manifest, as an abstract proposition of the law of evidence, but it appears that appellant had read copious extracts, from the report of the testimony of appellee at the former trial, for the purpose of showing contradictions on the part of the witness, and under these circumstances it was not improper to read other statements, which appeared to reconcile the testimony of the witness, and to show there was no contradiction. Other exceptions were saved to rulings of the court, in the admission and exclusion of evidence, but we deem it unnecessary to further discuss that feature of the case.

At the request of appellee, the court gave to the jury instructions numbered 1, 2 and 3, as follows:

1. You are instructed that if a person undertakes to contract as an agent for a corporation, and the contract is not legally binding upon the corporation, the agent makes himself thereby personally liable. If, therefore, you find that the defendant, on behalf of the Midland Land & Development Company, employed the plaintiff as its agent, for the sale of the lands of said company, on the terms set forth in the complaint, and if you further find that the plaintiff procured a *bona fide* purchaser for said lands, ready and willing to purchase the same on the said terms, you will find in favor of the plaintiff and will

assess his damages at the rate of fifty cents per acre for each acre of land belonging to the land company and which, by the terms of the contract, he would have been authorized to sell, if said contract had been binding on the said company.

2.   If the defendant knew that the plaintiff was going to put his commission into the trade, and take an interest in the land, and join with Ferguson in a resale of the property, this fact alone would not forfeit plaintiff's right to his commissions.

3.   If you find from the evidence that Rittenhouse represented to Bell that the Midland Land & Development Company would sell the lands described in the complaint to the first person who might be produced to buy them, on terms which were agreed upon between Rittenhouse and Bell, and Rittenhouse assumed authority to offer said lands for the Midland Land & Development Company, and upon the production of such a purchaser by Bell, would pay to Bell a commission of fifty cents an acre, and that Bell, in pursuance to said offer, produced Ferguson as a purchaser, and that said Ferguson was ready, willing and able to purchase said lands, upon the terms agreed upon by the said Rittenhouse and the said Bell, and that Rittenhouse and the Midland Land & Development Company refused and declined to convey said lands to said Ferguson, in accordance with the agreement between Bell and Rittenhouse; and if you further find that the Midland Land & Development Company repudiated the authority of Rittenhouse to make such a contract in its behalf, then your verdict will be for the plaintiff for the amount sued for.

Appellant excepted to the giving of each of these instructions. The objection to the first instruction is that it says, if a person undertakes to contract as an agent for a corporation, and the contract is not legally binding on the corporation, the agent makes himself personally liable, and it is insisted that an agent with plenary power may undertake to make a contract for a corporation, and the contract may not be binding upon

the corporation for any of the causes which, under the law, would prevent it from having any binding force, and yet there would be no liability on the part of the agent. This is no doubt true, but such an objection should be specific and not general. *St. L. I. M. & S. R. Co.* v. *Pape,* 100 Ark. 269; *St. L. I. M. & S. R. Co.* v. *Hutchinson,* 101 Ark. 424.

But no question arose in this case which made it necessary to define this limitation of the right to contract. The question here involved, was a broad one of fact, which is settled by the verdict of the jury. And the same thing may be said of the third instruction which was also objected to. It is contended that this instruction invades the province of the jury by the assumption that Rittenhouse and Bell agreed on terms, which Rittenhouse denies, and which constitutes the main issue to be submitted to the jury. But we do not think it is open to that objection, and no specific objection to that effect was made and it is manifest that the court had no such purpose.

A number of instructions were given at the request of the defendant which defined the law of his contention, and which directed the jury to find a verdict in his favor, if they found the facts to be as alleged by him, and it will not be necessary to set them out nor discuss them. Other instructions asked by defendant were refused, but we find no error in that respect. Upon consideration of the whole case, we are of opinion that it was fairly submitted to the jury, and the evidence is sufficient to support the verdict and it is accordingly affirmed.