MORNING STAR MINING COMPANY *v.* BENNETT.

Opinion delivered May 5, 1924.

1. PERPETUITIES—CONTRACT TO SELL REAL ESTATE.—A contract authorizing an agent to sell mining properties is not void as creating a perpetuity because no time limit was fixed for performance, since the agent must proceed within a reasonable time to effect a sale.

2. CONTRACTS—MUTUALITY.—A contract authorizing an agent to sell mining properties is not void as being unilateral or without consideration where it contemplated that the agent should effect a sale at her own expense, and she incurred considerable expense in attempting a sale, and earnest money, deposited by prospective buyers secured by her efforts, was appropriated by the owners.

3. BROKERS—FRAUD.—Evidence *held* to sustain a finding that a contract authorizing an agent to sell mining properties was not procured by fraud.

4. CORPORATIONS—AUTHORITY OF MANAGER TO SELL PROPERTIES.—The general manager of a mining corporation has no implied authority to bind it by a sale of its physical properties.

5. BROKERS—VALIDITY OF CONTRACT TO SELL PROPERTY.—A contract by which the general manager of a mining corporation, without

authority, impowered a broker to sell the property of the corporation and of others, is void, and will be canceled as a cloud upon the title.

6. BROKERS—REASONABLE TIME TO EFFECT SALE.—An agent to procure a purchaser of land was not afforded a reasonable time in which to dispose of mining properties placed in her hands for sale where, shortly after her contract was entered into, part of the properties were sold, and suit was brought to cancel her contract.

7. BROKERS—BREACH OF CONTRACT—DAMAGES.—Before an agent authorized to sell mining properties can recover damages for refusing to permit her to make the sale, she must show that she could have made a sale by which she would have earned a commission.

8. PLEADING—AMENDMENT TO CONFORM TO PROOF.—Where pleadings are insufficient to raise issues made by testimony admitted without objection, they will be treated on appeal as amended to conform to the proof.

Appeal from Marion Chancery Court; *Ben F. Mc-Mahan,* Chancellor; reversed in part.

*Jewell H. Black* and *Coleman, Robinson & House,* for appellant.

Chase had no authority to execute the contracts on behalf of appellant. Such contracts are not within the real or implied powers of even the directors of a corporation, nor within those of a majority of the stockholders in all circumstances (14 C. J., Corporations, § 1323), and not within the power of an officer, in the absence of proper authority from stockholders. 84 Ark. 444; 79 Ark. 113; 70 Ark. 232. The burden of establishing the authority of an agent is upon the party asserting it. 93 Ark. 600; 101 Ark. 68; 103 Ark. 72. The declarations of the agent are not admissible to establish his agency. 31 Ark. 212. One does not acquire the authority to make such contract because he may own stock or a majority thereof. 14 A. C. J., Corp., § 1842.

*Floyd & Floyd,* for appellee.

The contract was not void for want of consideration, as a consideration was recited. 6 R. C. L., p. 657, par. 64; *Id.* p. 678, par. 85-86; 10 S. D. 611. As to what constitutes a consideration, see 9 Cyc. 311 (D); 21 Ark. 249.

Inadequacy of consideration does not affect the contract.
A. L. R. vol. 3, p. 353; 6 R. C. L. p. 652, par. 66; 9 Cyc.
365; 33 Ark. 97; 31 Ark. 631.   There was no fraud in
procuring the contract.   Fraud as a defense must be
proved.   12 R. C. L. p. 424, par. 172; 63 Ark. 16; 77 Ark.
351.   The contract is not unilateral and void under the
following authorities: 6 R. C. L. p. 687, par. 74; *Id.* p. 676,
§ 84; 9 Cyc. p. 308 (IV) ; 24 A. L. R. p. 1530; 94 Ark. 9;
40 Minn. 497.   The contract is not null and void as
attempting to create a perpetuity.   21 R. C. L. p. 287,
par. 9; 3 Ark. 147; 74 Ark. 104; 74 Ark. 545; 6 R. C. L. p.
646, par. 283; 24 A. L. R. 1537 (case p. 1530) ; 193 Mass.
11; 6 L. R. A. (N. S.) 865, and note.   The contentions of
appellant that Chase had no authority to make the con-
tract, and that there was no breach by the appellant
mining company, were not raised in the court below,
and cannot be raised now.   71 Ark. 242; 72 Ark. 539;
74 Ark. 551; 77 Ark. 27; 94 Ark. 390; 80 Ark. 245.
Authority may be implied from the conduct of an officer
of a corporation and the acquiescence of the directors,
and third persons are protected against irregularities
of which they have no notice.   7 R. C. L. p. 620, par. 616;
7 R. C. L. p. 571, par. 559; 7 R. C. L. p. 593, par. 586;
*Id.* p. 620, par. 616; 79 Ark. 338; Fletcher, Cyclopedia,
Corporations, ch. 42. par. 1943, p. 3188.   Knowledge of
the execution of the contract by the general manager is
imputable to the corporation.   4 Fletcher, Cyc., c. 42, p.
3462, § 2234; 118 Ark. 19a.   Filing of the contract and
recording same was notice to the corporation. 4 Fletcher,
Corp. c. 42, § 2198, p. 3411.   A corporation cannot avail
itself of want of power or lack of authority of its officers
to bind it, unless the defense is made on such grounds.
7 R. C. L. p. 629, par. 628; 89 Ark. 435; 80 Ark. 65.   By
failing to disaffirm, the contract was ratified.   4 Fletcher,
Cyc. Corp. § 2198.   A breach of contract renders the
employer liable to the agent.   4 R. C. L. p. 254, § 9; 84
Ark. 462; 91 Ark. 212; 24 L. R. A. (N. S.) 1530.   Corpora-
tions are liable in damages for the wrongful acts of their
officers.   7 R. C. L. p. 647; §§ 650-552; 58 Ark. 387.

SMITH, J.   This suit was brought by G. W. Chase
and the Morning Star Mining Company against Roze E.
Bennett for the purpose of canceling an agency contract
for the sale of real property which Miss Bennett had
caused to be acknowledged and placed of record.   She
filed an answer and a cross-complaint for damages for
breach of her contract of agency.   Numerous depositions
were taken, upon which the cause was heard, and the
complaint was dismissed for want of equity, and a decree
was entered in favor of Miss Bennett upon her cross-
complaint for $5,000 damages for breach of the contract,
and this appeal is from that decree.

On June 5, 1919, Chase and Miss Bennett entered
into two contracts, or, rather, one contract evidenced by
two writings.   It is not questioned that these writings
were intended to be construed together as constituting
a single contract.

The first writing recited that G. W. Chase, on behalf
of himself and associate owners of the Morning Star
group of mining properties, located in Marion County,
Arkansas, had agreed as follows:   That Chase had, for
himself and on behalf of the associate owners, granted
to Miss Bennett the sole and exclusive right to sell and
dispose of the mining properties, the sale to be made
through a trustee residing in Little Rock, to be approved
by Chase, upon such terms and at such prices as might
be named by Miss Bennett, and it was provided that, out
of the money paid upon such sale, sixty per cent. thereof
should be paid Chase until he had received the full price
of the property, and he agreed to execute all necessary
contracts or conveyances to carry the agreement into
effect.   The other writing, executed and delivered
contemporaneously, recited an exclusive agency to Miss
Bennett to sell the property for the net price of $130,000,
and that her compensation should be the excess of that
amount for which she might sell the property.   This
writing also provided that Miss Bennett should have the
exclusive right to fix the selling price, the terms of sale
to be agreed upon by her and Chase, and that Chase

should not in any way fix a price to a prospective purchaser, or attempt to sell the property, and that "this contract shall be in force and effect until said properties are sold or until terminated by the consent of both parties hereto." It was alleged by the plaintiffs that the execution of this contract was procured by the fraudulent representation that Miss Bennett had a prospective purchaser at the price named, with whom she was ready to close a deal in sixty days, and that the money would be paid in ninety days, whereas she had no purchaser at any price. It was also alleged that the contract was executed subject to the approval of John Reid, of Memphis, the president of the Morning Star Mining Company, a corporation, and J. A. Hartman, the secretary thereof, and should not become binding as a contract until the approval of Reid and Hartman had been secured, and further, that the contract was without consideration, and constituted a perpetuity, and was void for those reasons as well.

The contract did not specify what property was included in the designation of "Morning Star group of mining properties, located in Marion County, Arkansas," but it is not questioned that the property referred to was a mine owned by the Morning Star Mining Company and other mines having names as follows: Orphan Boy, Guy, Ben Carney, Smuggler, Fair Play, Capps, Cold Spring.

It does not appear whether any of these other mining properties were owned by corporations or not, but some of them were not, and they were owned by a large number of persons. The names of a number of these owners appear in the record, but it is not contended that all of the names of these owners are disclosed in the record. On the contrary, this suit was brought by G. W. Chase individually and the Morning Star Mining Company, a corporation, and there were no other plaintiffs, and, while Miss Bennett filed a cross-complaint, she brought in no additional parties, and the only parties to

the record are Chase and the Morning Star Mining Company and Miss Bennett.

The contracts set out above were not acknowledged by Chase, but on September 22, 1919, Miss Bennett acknowledged the execution of the instruments, and, in her acknowledgment, caused a description of all the lands referred to in the contract to be inserted, and she had the instrument thus acknowledged recorded.

The execution of the contracts was witnessed by J. W. McDaniels, and Chase testified that McDaniels, at the time of their execution, made a verbal contract with Miss Bennett to include in the contract his Morning Star stock and his interest in the Ben Carney mine, the same being a three-fourths interest. It is unnecessary to consider what individual liability McDaniels thus incurred, as he was not made a party to this suit.

We think the contract here sought to be canceled and upon which Miss Bennett bases her cross-complaint is not void as creating a perpetuity. It is not a grant of lands, and does not vest any interest therein in Miss Bennett, but, even if it did, that interest could not have extended beyond her lifetime. *Cribbs* v. *Walker*, 74 Ark. 104. However, we think the contract is a simple contract of agency, in which no time limit is fixed for performance of the contract, and it will therefore be construed as one granting her a reasonable time only in which to effect a sale of the property.

At § 28 of the chapter on Perpetuities in 21 R. C. L., p. 303, it is said: "Nor is a contract placing one's property in another's hands to manage and sell void as in violation of the rule against perpetuities because it contains no limitation upon the duration of the contract, since the donee must proceed under the contract within a reasonable time, and his authority will terminate with his death." See also *Mills* v. *Smith*, 6 L. R. A. (N. S.) 865; *Harris* v. *McPherson*, 24 A. L. R. 1530, and numerous cases there cited by the annotator.

We think the contention that the contract is unilateral and void, as being without consideration, is not well

taken. The contract recites a consideration of a dollar paid and the agreement by Miss Bennett to effect a sale at her own expense. This contract contemplated that she would incur considerable expense, and Miss Bennett testified that she did incur expense amounting to $2,000 in her efforts to sell the property, and that, in addition, she advanced $600 in money to Chase to meet certain pressing personal obligations. It appears that a portion of these $2,000 represented an expense incurred in having a survey and inspection and maps of the Morning Star properties made, under a prior contract with Chase to sell those properties, and, while no sale was effected then, it appears that $7,500 in earnest money was deposited and forfeited by the prospective purchaser produced by Miss Bennett, and this money was paid to and appropriated by the owners of that property. We think the reciprocal obligations of the parties to this contract furnished a sufficient consideration to meet the requirements of the law in that respect. *Nothwang* v. *Harrison,* 126 Ark. 548.

We are also of the opinion that the execution of the contract was not procured by fraud. It is true that Chase testified that Miss Bennett reported that she had a purchaser at hand with whom she could and would close a deal upon the terms authorized by the contract within sixty days, and that he also testified that the contract was provisional or tentative, and was to remain so until both Reid and Hartman had approved it, and several witnesses corroborated him in these statements. But the contract was actually delivered to Miss Bennett, and she testified that Chase represented to her that he had full authority to act for all the owners of the property which she proposed to sell, and she was not requested or required to submit it to either Reid or Hartman or any one else for approval, and that she did not represent that she had a purchaser at hand. Subsequent correspondence between Chase and Miss Bennett corroborates her version of this transaction. In a letter from Chase to Miss Bennett, dated June 23, 1919, he

wrote her as follows: "In regard to you seeing Reid, that is not necessary, but it was your suggestion when you were here on the 5th, and I would like for him to know from you direct something of your hopes and plans."

We think, however, that the testimony does not show that Chase had authority to bind the owners of the property which his contract with Miss Bennett authorized her to sell. As we have said, there were half a dozen or more separate mining properties which the contract authorized Miss Bennett to sell, and at least one of these was owned by a corporation, and no attempt was made to show that the corporation itself had authorized the sale of its property, and the contract was not for the sale of the stock of the corporation but for the sale of its physical properties, and such a contract by Chase, who was only the general manager thereof, could not bind the corporation; nor could it have been made binding on the corporation even though it had been ratified by both Reid, the president, and Hartman, the secretary, as they themselves possessed no such power. *Fort Smith Wagon Co.* v. *Baker,* 84 Ark. 444; *Dixie Cotton Oil Co.* v. *Morris,* 79 Ark. 113; *Bloch Queensware Co.* v. *Metzger,* 70 Ark. 232.

Moreover, as we have said, the Morning Star Mining Company did not own all the lands which the contract authorized Miss Bennett to sell. There were 450 acres of the property, and the Morning Star Mining Company owned only 160 acres, and the remaining 290 acres were the property of the other mines, which were owned by a large number of people, having various interests in the land, and no attempt was made to show that Chase had any authority to represent these owners. On the contrary, we think it affirmatively appears that Chase had no such authority, and some, at least, of these owners did not know—and probably do not yet know—that Chase ever assumed to exercise any such authority.

The contract is an indivisible one. It fixed a price for all the property, and did not authorize the sale of any

part thereof less than the whole, and, as it appears that Chase assumed an authority he did not possess, the contract must be held to be void, and it should therefore be canceled as constituting a cloud on the title.

It does not follow, however, that, because the contract is void as against all persons except Chase, no liability against any one can be predicated upon it. Chase assumed an authority he did not possess. Without authority so to do, he contracted with Miss Bennett to perform a service for the owners of this property, and we think it appears that she entered into this contract in good faith, under the assumption that Chase had the authority which he attempted to exercise. His liability must therefore be determined by a consideration of the obligation to Miss Bennett imposed by the contract. *Arkmo Lbr. Co.* v. *Cantrell,* 159 Ark. 445; *Rittenhouse* v. *Bell,* 106 Ark. 315.

As we have said, the contract gave Miss Bennett a reasonable time within which to effect a sale, and this was not afforded her, in view of the character of the property, for, very shortly after its execution, McDaniels, who had witnessed the contract, made a sale of his own interest and that of certain other owners of the stock of the Morning Star Mining Company to one Straube, of Pittsburg, Pennsylvania, and certain stock belonging to Chase himself, which had been placed in a bank in escrow, was withdrawn, and these acts prevented Miss Bennett from making the sale which the contract contemplated. This suit itself was a repudiation of the contract and a breach thereof.

It is insisted that, whatever view may be taken of the issues we have discussed, Miss Bennett is not entitled to recover anything as damages because she did not produce a purchaser ready and willing and able to buy on the terms upon which she was authorized to sell. Miss Bennett does not sue, however, for a commission. Her cause of action is for the breach of a contract of agency, and, as it appears, from what we have said, she has made a

case entitling her to this relief, the question arises as to what her measure of damages is.

Before she could recover anything by way of damages, she would, of course, have to show that, within a reasonable time, she could and would have made a sale at a price in excess of $130,000 net to the owners, and we think she has made this proof. The testimony shows that she made a very earnest effort to sell this property and incurred large expense in her efforts to do so. She made the showing that she had interested a broker in New York City in the proposition, who undertook to put the deal over for an equal division of the profits, and that this broker had raised $20,000 for that purpose. This deal was not consummated because, as appears from Miss Bennett's testimony, the broker refused to proceed, upon being advised of the breach of the contract on the part of Chase, and she did not thereafter attempt to sell the property, as Chase's breach had made it impossible for her to do so.

Without setting out in detail the testimony on this phase of the case, we announce our concurrence in the finding of the chancellor that Miss Bennett made a showing that she would have sold the property at a profit if she had been allowed to do so, and the chancellor fixed this profit at $5,000, which finding is not, in our opinion, clearly against the preponderance of the evidence.

Various questions are raised about the sufficiency of the allegations of both the complaint and the cross-complaint to raise the issues here reviewed; but, without setting out these pleadings, it suffices to say that the testimony developed the issues we have discussed, and this testimony was taken without objection on either side, and, if the pleadings are not otherwise sufficient to raise these issues, they must be treated as amended to conform to the testimony taken without objection.

After the institution of this suit, and after the deposition of Chase had been taken, in which he testified that he had no authority to contract for the sale of the holdings of the Morning Star Mining Company, he died, and

the cause was properly revived against his administrator, and the decree was rendered against his estate as well as against the Morning Star Mining Company.

The decree against the Morning Star Mining Company must be reversed, and it is so ordered, and the contract which Miss Bennett has placed of record will be ordered canceled, but the decree awarding damages against the estate of Chase will be affirmed.