GAINES v. ARKANSAS NATIONAL BANK.

Opinion delivered March 8, 1926.

1. TRUSTS—JURISDICTION OF EQUITY.—When a trust is created by will, a court of equity, as incident to its jurisdiction over trusts, has jurisdiction to construe the will.

2. WILLS—CONSTRUCTION—INTENTION OF TESTATOR.—In construing the provisions of a will, the intention of the testator must first be ascertained, and, when not at variance with the recognized rules of law, must govern.

3. WILLS—CONSTRUCTION.—The intention of a testator must be gathered from all parts of a will, and such construction be given as best comports with the purposes and objects of the testator, and as will be least conflicting.

4. WILLS—POWER TO SELL AND INVEST.—Where a testator conveyed all of his personal property absolutely to his wife and sons, and conveyed his real estate to a trustee with directions to pay the net income, during their lives, to his wife and sons and to the survivor of his sons, and that, upon the death of the survivor, the trust should terminate and the property should go to the lawful issue of such sons, or, in default thereof, to testator's lawful heirs, a provision empowering the trustee to sell the lands, and providing that the sums arising from a sale of the lands were "to be reinvested and to become a part of the trust property and shall be administered and descend as herein provided," *held* to contemplate that funds derived from a sale of lands or from insurance collected on a building destroyed by fire should be reinvested in real estate situated in the county where testator's lands were located.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*Martin, Wootton & Martin,* for appellant.

WOOD, J.  A. B. Gaines died testate on October 12, 1921, leaving surviving him his wife, Mary C. F. Gaines, and two sons, D. Fellows Gaines and A. B. Gaines Jr. His will was duly probated, and it contains, among others, the following clause:

"Third:  All of the real estate owned by me at the time of my death, which is situated in Garland County, State of Arkansas, I give, devise and bequeath unto the Arkansas National Bank of Hot Springs, Arkansas, as trustee.  To have and to hold the same unto the said the Arkansas National Bank, and unto its successors and assigns for and during the natural lives of my wife, Mary C. F. Gaines, and my sons, D. Fellows Gaines and A. B. Gaines Jr., and the last survivor of them, but upon the following express terms and conditions, viz:  My said trustee shall collect all rents and profits arising or issuing from said real estate, and, after paying all taxes, insurance and repairs and reasonable compensation for its services, shall pay the net income therefrom to my wife, Mary C. F. Gaines, and my sons, D. Fellows Gaines and A. B. Gaines Jr., in equal portions of one-third to each, such payments to be made quarterly, or oftener if

the beneficiaries of this trust require. My said trustee is hereby empowered and authorized to execute leases upon said real estate and to receive all rents and other profits therefrom. My said trustee is further authorized, in its discretion, but only with consent of my wife and sons, all three agreeing thereto, to sell any or all of my said real estate, and to execute deeds and conveyances thereof. But all sums arising from such sales to be reinvested, and to become thereupon a part of the trust property, and shall be administered and descend as herein provided. My said trustee is directed to keep all buildings and structures on my said lands insured, and, in the event of loss by fire, to collect the insurance thereon, and rebuild or repair same.

"For the purpose of erecting permanent improvements on my said real estate, my trustee may, with consent of my beneficiaries, borrow money, and, for the purpose of securing the same, may execute mortgages or deeds of trust upon such terms and running for such periods of time as my said trustee and beneficiaries may agree.

"Fourth: In the event either or both of my sons die, leaving lawful issue of his or their body living, or descendants of such issue, such issue, or descendants, shall immediately take fee simple title to all of the property hereby devised in trust for the parent of such issue. If either of my sons die without lawful issue, the interest of such son shall vest in the survivor. In the event of the death of my wife, and if both of my said sons shall die without lawful issue of their bodies, or descendants of such issue, then in such event, the trust herein created shall immediately determine, and all of the trust estate herein devised shall pass in fee simple to my heirs at law; my true intent being that the income from the trust estate hereby created and devised shall be enjoyed by my said wife and sons, and the last survivor of them, during their lives, and, if my said sons or either of them shall die leaving lawful issue of their body, my entire

estate shall vest in such issue in fee simple, after the determination of the life estate hereby created. But, in the event of the death of my wife, and if my sons shall both die leaving no lawful issue, then my estate shall vest in fee simple in my heirs at law."

The testator, at the time of his death, owned certain lots in Hot Springs, Garland County, Arkansas, on which a building was situated. After the death of the testator this building was destroyed by fire. The trustee collected the sum of $18,000 insurance on the building. This amount was not sufficient to erect on the lots the same character of building that was destroyed, and the devisees in the will and beneficiaries in the trust created thereby demanded of the trustees that it invest the proceeds of the insurance in its hands in approved securities, such as stocks and bonds of various kinds, and notes secured by mortgages on real estate. They also requested that the trustee sell certain other real property belonging to the estate of the testator and invest the proceeds of such sale in approved securities of the kind mentioned. The trustee, while willing to sell certain of the real estate, was unwilling to invest the proceeds of the sale as requested by the beneficiaries. This action was instituted by the devisees and beneficiaries under the will, hereafter called appellants, against the Arkansas National Bank of Hot Springs, the trustee named in the will of A. B. Gaines, hereafter called appellee.

The appellants alleged the above facts in their complaint, and that they had assured the appellee of their consent for it to make the investments as requested by them, but, notwithstanding this fact, it had refused to comply with their request, and they prayed for a construction of the will in order to determine whether the trustee had authority thereunder to invest the money in its hands derived from the insurance policies, and to sell the real estate and reinvest the proceeds in approved securities as indicated, and prayed that, if it should be determined that it had such authority, an order be entered to that effect.

The appellee, in its answer, admitted the facts set up in the complaint, and averred that its reason for refusing to comply with the request of the appellants was because it was uncertain as to whether it had authority to do so under the will, and it joined in the prayer of the appellants that the will, as above set forth, be construed, and that the appellee be directed in what character of securities it was authorized to invest the insurance money it had already collected, and as to whether it can sell and invest the money arising from the sale of real estate in securities of the character designated, or whether it was required to invest the same only in real property.

The trial court, after finding the facts as set up in the pleadings, entered a decree adjudging that "the true intent and meaning of the last will and testament of A. B. Gaines, deceased, is that the defendant, as trustee of said real estate, situated in Garland County, Arkansas, is authorized under the terms of said last will and testament to invest the moneys in its hands derived from fire insurance collected on building situated on said real estate and destroyed by fire, if such funds are not used for the purpose of rebuilding on said real estate, in first real estate mortgages, United States Government securities, State bonds, county bonds, municipal bonds, improvement district bonds and school district bonds, but not in railroad bonds, dividend-paying stocks in railroad companies, stocks of public utilities, stocks of private corporations, or personal securities; and that the defendant, as such trustee, in the event of the sale of any real estate so held by it in trust, under the terms of said last will and testament, is authorized and only authorized to reinvest the funds derived from any such sales in real estate, and is only authorized to make such investments in real estate in Garland County, Arkansas, where the real estate so held by it in trust under the terms of said last will and testament is situated, and within the jurisdiction of the Garland Chancery Court, to the end that

this court may exercise control over the acts of said trustee.'' From that decree is this appeal.

There is sufficient ambiguity in the will of A. B. Gaines creating a trust estate to justify the trustee and the beneficiaries under the trust in seeking a construction of the will by a court of chancery. Authority for so doing is found in *Williamson* v. *Grider,* 97 Ark. 588, 607, where we said: ''When a trust is created by will, a court of equity has jurisdiction to construe the will. This power is incident to the jurisdiction which courts of chancery have over trusts.'' See also authorities there cited.

In order to properly construe the will, it is necessary to consider all of its provisions. In *Parker* v. *Wilson,* 98 Ark. 553, 561, we said: ''In construing the provisions of a will, the intention of the maker is first to be ascertained, and, when not at variance with recognized rules of law, must govern. The intention of the testator must be gathered from all parts of the will, and such construction be given as best comports with the purposes and objects of the testator, and as will least conflict.'' See also *Gregory* v. *Welsh,* 90 Ark. 152. In arriving at the intention of the testator in the third clause of the will, which we are asked to construe, considerable aid is gained by considering the clauses immediately preceding and following. By the second clause the testator disposes of all of his personal estate by bequeathing the same to his wife and two sons in equal portions, share and share alike, to have and to hold in severalty as their absolute property. This second clause makes absolute disposition of all the personal estate which the testator might possess at the time of his death, of every character. No trust is created with reference to this personalty. At the death of the testator the legatees have the right to all the personal estate then in existence, without any limitation whatever upon its use and enjoyment—the absolute dominion over it—and they hold their respective shares or portions not jointly, but in severalty.

By the third clause above set forth the testator devises all of his real estate to the appellee in trust for the benefit of his wife and two sons during their natural lives, and the life of the last survivor. By this clause the duty was imposed upon the trustee to collect the rents and profits from the real estate and, after paying taxes, insurance, repairs and compensation for its services, to turn over to each of the beneficiaries named the balance in equal shares. The trustee is authorized under this clause, with the consent of the beneficiaries named, to borrow money and execute mortgages to secure the same, to make permanent improvements on the land, and also to sell the lands, but the funds arising from a sale of the lands were "*to be reinvested and to become thereupon a part of the trust property.*"

By the 4th clause, upon the death of any of the beneficiaries, his or her interest passes to the survivor or survivors. If either of the sons die, leaving issue of body, such issue takes the parent's share in fee simple, and, upon the death of the last surviving beneficiary without issue, the issue of the other beneficiary, if any, takes the entire estate in fee simple. Upon the death of the widow and the death of the two sons without issue, then the heirs at law take the estate in fee simple, and the trust is at that time terminated.

The effect of the third and fourth clauses of the will was to create an estate in fee tail in the two sons of A. B. Gaines of the lands of which he died seized and possessed, which, under our statute and decisions, vested in them only a life estate. C. & M. Digest, § 1499; *Horsley* v. *Hilbourn*, 44 Ark. 458; *Wilmans* v. *Robinson*, 67 Ark. 517. The heirs general at law of A. B. Gaines had only a contingent remainder in the estate, such contingent estate being subject to defeat by the death of D. Fellows Gaines and A. B. Gaines Jr., leaving issue surviving them. But, while this interest of the general heirs at law of A. B. Gaines in his real estate is contingent only, it nevertheless reveals the intention of the testator not to vest

the fee simple title in his widow and sons, the beneficiaries named in the deed of trust. Manifestly, the purpose of the testator, when the language of all the clauses of the will is considered, was to give his widow and two sons all his personal property of which he was possessed at the time of his death absolutely, as we have already said, and in severalty share and share alike; and likewise to give them the rents and profits, the income derived from the rent or use of his real estate, as long as they lived. But, as we construe the instrument, it was likewise clearly his purpose to give his widow and sons a life estate only in his real property, to enjoy only the rents and profits thereof, the usufruct paid to them under the trust. The beneficiaries named have no power whatever of disposition or sale of the real property; neither has the trustee any such power, except only with the consent of all the beneficiaries named. With the consent of all the beneficiaries named the trustee may sell and execute deeds to the real estate, but even this power of disposition carries with it the limitation imposed as a duty or obligation on the part of the trustee to reinvest the proceeds in such manner that the investment or reinvestment shall become a part of the trust property. The language placing this limitation and enjoining this duty upon the part of the trustee in case of the sale of real property is: "But all sums arising from such a sale to be reinvested and to become thereupon a part of the trust property, and shall be administered and descend as herein provided."

It occurs to us that the language quoted above is a clear limitation upon the power of the trustee to reinvest the proceeds of the sale of real estate, and it restricts him to reinvestments in other real property. This is true for the reason that in no other way could the proceeds become a part of the trust property, because only the real property is embraced within the terms of the trust to be "administered, and (to) descend as therein provided." The personal property of the testator, under the terms of

the will, does not descend to the beneficiaries named in the will as a part of the trust estate. Only the real estate is brought within the administration of the trust; only the real property and proceeds of the sale thereof reinvested in other real property are administered and descend as in the will provided. Furthermore, the word "reinvested" signifies that the proceeds of the sale of the real estate are to be laid out or invested in the same kind of property as that from which the proceeds were derived.

Now, the proceeds of the insurance policies on the buildings destroyed by fire cannot properly be considered as rents and profits arising from the real estate. The insurance money rather falls more properly in the category of money derived from the sale of real estate than in the classification "of rents and profits" issuing from the real estate. The testator signified his intention to have the insurance money invested in real property by the direction to the trustee to use the same to "rebuild or repair" the buildings or structures on the land.

We are convinced that it was the intention of the testator that the proceeds derived from the sale of, or insurance on, the real estate should be reinvested in the same kind of property; that is, real property, and that it must be so invested in order to come within the trust created by the testator's will. Since the entire real estate or property covered by the trust is situated in Garland County, Arkansas, and since the domicile of the trustee is in Hot Springs, Garland County, Arkansas, it seems to us that it was the intention of the testator to confine the administration and operation of the trust to that county, and that the trustee would not be authorized to make investments in real estate outside of the territory of Garland County, Arkansas.

Our conclusion therefore is that the trustee, under the terms of the trust, must invest the insurance money in its hands, and all the proceeds of the sales of real estate held by it in trust, in other real estate in Garland County,

Arkansas. 1 Perry on Trusts, § 452, says: "If there are directions in the instrument of trust as to the time, manner, and kind of investment, the trustee must follow the direction and power so given them. The creator of a trust may specify the kind of investment, and what security may be taken, or he may dispense with all security. In the absence of such directions and powers, the trustees must be governed by the general rules of the court, or by the statutes and laws of the State in which the trust is to be executed. If there are no directions in the instrument, nor rules of court, nor statutory provisions in relation to investments, they must be governed by a sound discretion and good faith. They must not have speculation in view, but rather a permanent investment, considering both the probable income and the probable safety of the capital."

The testator in the present case has "hedged in" the discretion of the trustee by the directions in the will so as to prevent the trustee and beneficiaries from exercising broad general powers to invest in the various kinds of securities named in the complaint. The wisdom or unwisdom of this policy is not within the province of the court to determine. The intention of the testator as gathered from the language of the will in the creation of the trust is the pole-star to guide the court in the proper construction of the will. The language of the will, as we have seen, does not confer upon the trustee the general powers which the appellants seek to have it exercise. The case does not present any such exigencies in the administration of the trust as to demand a departure from the language of the will, under the direction of the court, in order to conserve what the trustee and the beneficiaries and the court might think a more expedient administration of the trust estate than that outlined and directed by the creator of the trust.

Appellee has not cross-appealed from that portion of the decree directing it to invest the proceeds of the insurance in other property than real estate in Garland

County, and therefore we cannot reverse the decree as to this, but nevertheless, for the guidance of the trustee, and because such was its prayer, we have construed the will as a whole.

It follows that the part of the decree directing the trustee to reinvest in real estate in Garland County, the proceeds of the money derived from any sale of real property, in the event of such sale, is correct, and is therefore affirmed.