ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
v. JONES.

Opinion delivered November 28, 1910.

1. RAILROADS—AUTHORITY OF CONDUCTOR.—The authority of a railway train conductor extends merely to the control of the movements of his train and to the immediate direction of the movements of the employees engaged in operating the train, and does not ordinarily extend to making contracts on behalf of the railway company. (Page 561.)

2. SAME—AUTHORITY OF CONDUCTOR TO MAKE CONTRACTS.—In order that contracts made by a railway conductor may be obligatory upon the railway company, they must be made to enable him to perform the duties required of him, and must not relate to collateral matters, nor be outside of the line of duty assigned him, and there must be a necessity for immediate action. (Page 562.)

3. SAME—AUTHORITY TO EMPLOY HELP.—In the absence of any emergency the conductor of a freight train has no authority to employ any person to perform the duties usually performed by the brakeman, and such employment would not be binding upon the railway company. (Page 563.)

4. SAME—LIABILITY TOWARD VOLUNTEER.—One who sues the railway company for injuries received in the operation of a train while acting as brakeman under employment by the conductor is not entitled to recover where it is not shown that the conductor had authority, express or implied, to employ him, as he is neither a passenger nor an employee but a mere volunteer who assumed the risks of the situation in which he placed himself. (Page 563.)

5. SAME—WHEN BOUND BY CUSTOM.—To bind a railway company by proof of a custom of permitting persons to ride upon local freight trains in consideration of services performed by them in loading and unloading freight, there must be. also proof that the custom was known to the officials who conducted the affairs of the railway company or that it was so general and of such long continuance that it must be inferred that it was assented to by them. (Page 564.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; reversed.

Lindsay Jones, by N. A. Ford, his mother and next friend, brought this suit against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for injuries received by him while attempting to board one of defendant's local freight trains.

Lindsay Jones testified in his own behalf, and stated the circumstances connected with the happening of the accident substantially as follows:

He was a white person, and was 19 years old when he was injured. He had been at Bald Knob, a station on defendant's line of railroad in Arkansas, hunting work. He ran out of money, and, failing to obtain employment, he decided to return home. Higginson was the station on defendant's line of road nearest his home. He asked the conductor of one of defendant's local freight trains if he would let him ride and work his way to Higginson. The conductor answered: "I will see about it directly;" and directly came back and said: "Get on; you can work your way." The first stop was made at Judsonia, and he helped load and unload some freight. The conductor was standing around while the freight was unloaded. The next stop was at Kensett. Jones worked there, helping to load and unload the freight. While he was carrying a piece of freight from one of the cars to the freight house, the train without notice or warning of any kind was put in motion. Jones, after depositing the piece of freight in the freight room, turned around to get on the departing train. The train was running, and Jones reached up to get the handle of the front end of the caboose to get on it. His foot slipped and fell under the wheels of the caboose. It was mashed so badly that it was necessary to amputate it.

On the part of the defendant, it was shown that the conductor had no authority to employ any one to assist the train crew in the operation of the train, or in loading or unloading freight.

The conductor on behalf of the defendant testified that he did not contract with the plaintiff to carry him from Bald

Knob to Higginson in consideration of any services performed by him. He did testify to the fact that he saw the plaintiff on the train, and that he intended to collect his fare later, but that he overlooked or neglected to take up his fare.

On cross examination, in response to the question: "Isn't it a fact that people are carried free by the conductors on the local freight trains up and down the Iron Mountain road to assist the crew in the loading and unloading of freight at the stations?" he answered, "Colored men only."

The jury returned a verdict for the plaintiff, and from the judgment the defendant has duly prosecuted an appeal to this court.

*W. E. Hemingway, E. B. Kinsworthy* and *James H. Stevenson,* for appellant.

1. The verdict is contrary both to the law and the evidence. (1) The state of facts related by appellee, if true, did not make him a passenger. 95 S. W. 116; *Id.* 200; 58 Ark. 318, 323; 165 Fed. 403; 19 L. R. A. (N. S.) 988, 989, 991; 67 Fed. 522; 28 L. R. A. 749, 752; 93 S. W. 104; 5 L. R. A. (N. S.) 1025; 4 *Id.* 1027; 71 Miss. 70. Even if he had been a passenger, in running after the train he ceased to be such, since a person who wilfully waits until a train starts and then runs after it is not a passenger while so pursuing it. Hutchinson on Carriers, § 1006, p. 1161; 58 Ga. 461; 66 Ga. 764; 31 Ill. App. 460. (2) There was no breach of any duty appellant owed appellee. If he was not a passenger, and if by his own act he contributed to his injury, appellee is not aided by any presumption of negligence, but must prove it. 37 Ark. 136, 141; 69 Ark. 380; 62 Ark. 235; 86 Ark. 307; 82 Ark. 522. Since his own evidence showed that he was guilty of contributory negligence, the burden of proof shifted to appellee. 3 Hutchinson on Carriers, § 1417; 89 Ala. 247; 31 Neb. 796, 48 N. W. 890; 85 Ga. 653; 11 S. E. 872; 76 S. W. 232; 63 S. W. 1089. (3) The appellee was guilty of contributory negligence, as a matter of law, in attempting to board a rapidly moving train. 54 Ark. 25; 3 Hutchinson on Carriers, § § 1170-1182, and cases cited; Thompson on Negligence, § § 3000-1; 76 Ark. 10; 3 Hutchinson, Carriers, § 1420.

2. Appellee was neither a passenger nor an employee, but was a trespasser, and the only duty appellant owed him was not to wantonly injure him, or to exercise care not to injure him, if his peril was discovered in time to prevent such injury. 90 Ark. 278; 57 Ark. 461; *Id.* 136.

*S. Brundidge, Jr.*, for appellee.

1. The conductor being in charge of the train with full right to receive and discharge passengers, and the uncontradicted proof showing that he did receive appellee into the caboose, the latter was a passenger. 14 N. E. 198; 107 Mass. 107; 10 S. W. 487; 58 Me. 187; 91 Mo. 344; 72 Mo. 63; 30 Ill. 9; 35 Kan. 185. It is immaterial whether he paid any fare or not. 21 Am. & Eng. R. Cas. 152; 42 *Id.* 409; 79 Texas 371; 143 Fed. 834; 43 Mo. App. 342; 96 Pa. St. 256.

2. The employees in charge of the train, knowing that appellee was off the train assisting in the movement of freight. and that at their invitation, owed him, at the least, the duty to afford him a safe means of ingress into the caboose. In starting the train prematurely and without warning, appellant failed in this duty and was guilty of negligence. 68 Texas 370; 33 Am. & Eng. R. Cas. 543; 49 N. Y. 673; 100 Mo. 194; 75 Mo. 475; 98 Cal. 566; 97 Cal. 114; 66 Ga. 746.

3. Under the circumstances of this case, considering his youth, inexperience and ignorance, it was not contributory negligence for the plaintiff to attempt to board the train. 117 Fed. 127; 91 Ark. 108; 78 Ark. 260; 71 Ark. 55; 60 Ark. 549; 92 Ark. 444; 81 Ark. 187; 38 N. E. 578; 71 N. E. 985.

HART, J., (after stating the facts). It is the contention of the plaintiff that he made a contract with the conductor of one of the defendant's local freight trains to carry him from Bald Knob to Higginson in consideration of services to be performed by him in assisting the train crew in loading and unloading freight.

The undisputed evidence shows that the conductor did not have express authority to make such contract. Did he have implied authority to make it? The general rule is that the agent has the implied authority to do all things which are reasonably necessary to effectuate the main purpose for which he is employed.

Mr. Elliott says that the authority of the conductor ordinarily extends to the control of the movements of his trains and to the immediate direction of the movements of the employees engaged in operating the train; and does not extend to making contracts on behalf of the railway company. 1 Elliott on Railroad, § 302.

Continuing, the author says: "As we have said, the conductor has no general authority to make contracts on behalf of the company, but he may in rare cases of necessity, when circumstances demand it, bind the company by such contracts as are clearly necessary to enable him to carry out his prescribed duties. In order that contracts made by him shall be obligatory upon the company, they must be made to enable him to perform the duties required of him, and must not relate to collateral matters nor be outside of the line of duty assigned him. Thus, he may, where other provision has not been made, employ mechanics to repair a break of the cars or machinery which must be repaired before the train can proceed to its destination, and may engage men and teams to render the roadway or bridges secure for the passage of his train, when weakened or partially swept away by unforeseen causes; but in such cases the authority to contract does not exist unless there is necessity for immediate action. It is the necessity which confers the authority, not simply the position of conductor." 1 Elliott on Railroads, § 302.

In the case of *Eaton* v. *Delaware, etc., Ry. Co.,* 57 N. Y. 382, it is said: "There is nothing in the business of a conductor which would lead to the conclusion that he had authority to make contracts with persons to act as brakemen. His apparent duties are to carry forward a train after it is organized. The business of organizing it is in its nature wholly distinct. It is, in fact, committed to a train dispatcher." In *Cooper* v. *Lake Erie, etc., Ry. Co.,* 136 Ind. 366, 36 N. E. 272, the court said:

"While the conductor and brakeman were in charge of the train, it does not appear that they had any authority to employ assistance in its management. No emergency is shown for the employment of the appellant. * * * No custom, rule or regulation of the appellee company is shown by which the appellant might pay his way by working on the train, assisting

the brakeman or other employee. * * * At most, the appellant was upon the train by the sufferance of the conductor and brakeman, who were themselves without authority to receive him. Any dangers to which he might become exposed were wholly at his own risk. The company would be liable only for wilful injury to him." As bearing upon the question and recognizing this principle, we also cite the following: *Church* v. *Milwaukee & S. P. Ry. Co.,* 50 Minn. 218; *Louisville & N. Ry. Co.* v. *Ginley,* 45 S. W. (Tenn.) 348; *Everhart* v. *Terre Haute & Ind. Rd. Co.,* 78 Ind. 292; *Rhodes* v. *Georgia Rd. & Banking Co.,* 84 Ga. 320; *Vassor* v. *Atlantic Coast Line Rd. Co.,* 142 N. C. 68, 9 Am. & Eng. Ann. Cas. 535.

This principle was recognized and applied by this court in the case of *Railroad Company* v. *Dial,* 58 Ark. 318. The court held (quoting syllabus) : "Where a boy 15 years of age, at the request of the conductor of a freight train, undertakes to throw off the brake on a car, and is injured by striking his head on an iron bridge, he can not recover from the railroad company on account of its negligence in failing to warn him of the danger if the conductor had no express or apparent authority to employ him, and there was no exigency which called for the exercise of implied authority."

It is not claimed that there was any sudden or unexpected emergency which made it necessary for the proper operation or safety of the train for the conductor to employ the plaintiff. There is no evidence that the injury was wanton or wilful.

Applying the general principles above announced to the facts of this case as testified to by the plaintiff himself, and upon which he bases his right of recovery, it is apparent that he is neither a passenger nor employee. He bases his right to recover wholly upon the contract made with the conductor. He testified that he was performing the services usually performed by brakemen while making the trip. He could not be engaged in the immediate and direct duties of a servant and at the same time be considered a passenger. He was not an employee because the conductor had no authority, express or implied, to make the contract of employment. He was a mere volunteer, and as such assumed the risks of the situation in which he placed himself.

There was an attempt made to prove by the cross examination of the conductor the existence of a custom whereby persons were permitted to ride upon local freight trains in consideration of services performed by them in loading and unloading freight. The conductor says this applied to colored men only. But, in order to make the company liable, there must be proof, not only of the custom, but that it was actually known by the officials who conducted the affairs of the railway company, or that it was so general and of such long continuance that it must be fairly inferred that it was known and assented to by them. *Railway Company* v. *Bolling,* 59 Ark. 395. It might be inferred from the evidence of the conductor in this case that he allowed plaintiff to ride without collecting his fare; that he, the conductor, intended later to collect it; but that he overlooked it, or neglected to collect it, owing to his mind being occupied with other duties. But, whatever would be the rights of a person riding gratuitously in a coach provided for passengers by permission of the conductor without any evidence of his right to do so, such as a pass, that question has passed out of the case; for plaintiff was not injured while on the train; but, according to his own testimony, he had left the train, and was injured while attempting to re-enter it and be carried according to the terms of the contract which we have held the conductor had no authority, either express or implied, to make.

It follows that the court should have directed a verdict for the defendant as requested by it; and for the error in not doing so the judgment must be reversed, and the cause will be dismissed.

KIRBY, J., dissents.