ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* DELAMBERT.

Opinion delivered April 20, 1914.

1. RAILROADS—INJURY TO SERVANT—ASSUMED RISK.—The servant of a railroad company owes himself the duty to look out for his own safety, and the master will not be liable for an injury resulting to the servant from a risk assumed by the servant. (Page 449.)

2. RAILROADS—INJURY TO EMPLOYEE—LIABILITY—SUFFICIENCY OF EVIDENCE.—In an action for damages against a railroad company for personal injuries, where plaintiff was struck by a hand car, operated on defendant's track, the evidence held insufficient to sustain a verdict of recovery against the defendant. (Page 449.)

3. MASTER AND SERVANT—INJURY TO SERVANT—BURDEN OF PROOF.—The burden is upon a servant to show liability on the part of the master for injuries received by the servant, while in the discharge of his duties. (Page 451.)

4.  CUSTOMS AND USAGES—PROOF OF—LIABILITY—KNOWLEDGE.—In order
    to prove the existence of a general custom under which all per-
    sons who desired were permitted to run hand cars on the defend-
    ant railroad company's tracks, so as to render the company liable
    for any damage resulting from the negligence of such licensees,
    it must appear that such custom was actually known to the offi-
    cials of the company or that it was so general and of such long
    continuance as to warrant the inference that it was known and
    assented to by them.  (Page 452.)

Appeal from Bradley Circuit Court; *H. W. Wells,*
Judge; reversed.

*E. B. Kinsworthy, James C. Knox* and *T. D. Craw-
ford,* for appellant.

1.  The court erred in admitting incompetent testi-
mony of the alleged custom, some of which was ad-
mittedly mere hearsay, and none of which shows any
knowledge on the part of the company's officials of any
such custom, but, on the contrary, their testimony is
positive that they had no knowledge of the custom.  77
Ark. 405; 44 L. R. A. 687; 108 Ark. 437.

2.  The court should have directed a verdict for the
appellant.

(a)  The testimony clearly shows that in taking the
motor car out at night, appellee was violating a rule of
the company of which he had been informed.  He was,
as a matter of law, guilty of contributory negligence.  84
Ark. 377; 77 Ark. 405; 96 Ark. 461.

(b)  It is not conceded that he was engaged in the
master's service at the time he was injured, but, if so, he
knew the risk in taking the motor car out at night, and
assumed such risk.  56 Ark. 237; 104 Ark. 489; Acts
1909, p. 55.

(c)  No negligence of appellant was shown.  The
proof is entirely inadequate to prove a general custom
of running hand cars between Arkansas City and Mc-
Gehee.  96 Ark. 564; 154 S. W. 191; 85 Ark. 600; 95 Ark.
39; 93 Ark. 397; 155 Fed. 22; 65 Fed. 969; 45 Ark. 246; 40
Ore. 225; 4 Labatt, M. & S., § 1561; 144 S. W. 806.

*Jones & Owens* and *J. R. Wilson,* for appellee.

We think the custom was sufficiently established by the evidence, and that appellant is liable because (1) the custom was known to its superintendent; (2) it was so general that it must be inferred that it was known and assented to by the company's officials, and (3) that it was of such long continuance as to warrant the inference that the company's officials knew of and consented to the custom.   105 Ark. 334-340; 84 Ark. 382; 77 Ark. 405; 17 Tex. Civ. App. 585; 98 Mo. 62; 121 Ia. 121; 103 Va. 730; 79 N. W. 793; 117 Ia. 130.

McCulloch, C. J.   This is an action to recover damages on account of personal injuries received by plaintiff while he was working as mechanic in the service of the defendant at McGehee, Arkansas.

Plaintiff was working as repair man in and about the shops at McGehee.   The particular line of work in which he was engaged at the time of his injury was that of repairing motor cars.   It was his duty to repair the cars, and in doing so, it was necessary to take them out on the railroad track to try them out to ascertain whether or not they were in working order.   There was a branch line from McGehee to Arkansas City, on which there was only one train a day each way, and, according to the testimony, the instructions to plaintiff from his superior were to test the motor cars on that track.   It was while he was engaged in this work that his injury occurred.   On Sunday, July 14, 1912, he was at work on a motor car which was needed, and which it was necessary for him to get in repair as speedily as possible.   He took the car out on the track that morning, tested it and found that it was not in satisfactory condition, and continued his work repairing it during the day.   Late in the afternoon, or early in the evening, he got it in condition to test it again, and took it out on the track for that purpose, waiting first for the train to leave McGehee for Arkansas City.   He took several persons along with him to assist him in lifting the car off the track when it became necessary to turn around, or in the event he met a train or a hand car or speeder.   He left McGehee after dark, and after going

out a mile and a half or two miles, the motor car he was driving collided with a hand car coming from Arkansas City. He and his companions were thrown from the motor car, and he received serious injuries sufficient to warrant an assessment of damages in the amount awarded by the jury.

There is no controversy as to whether plaintiff was acting within the line of his duty in taking the car out on the track. But the testimony was sufficient to warrant the finding in his favor on that issue.

The evidence is also sufficient to warrant the conclusion that he was not guilty of any negligence which contributed to his own injury, but that the collision resulted from negligence of those operating the hand car in running the car at a high speed without keeping a lookout or displaying a light.

The right to recover damages from the company on account of the collision rests, if it exists at all, upon negligence of those in charge of the hand car and the company's responsibility for their act, for there is no liability if there was no negligence in the operation of the car, or if the car was operated without the knowledge or consent of the company's servant.

It was the duty of plaintiff to exercise care for his own safety in watching out and avoiding trains and other cars, and if there was no negligence in the operation of the hand car, then he can not recover from the company, for the collision resulted from a danger the risk of which he assumed in undertaking to do the work.

The evidence is sufficient, as before stated, to establish negligence on the part of the persons who were operating the hand car; but there is, in our opinion, no evidence establishing a state of facts which would make the company responsible for the acts of those persons. They were not servants of the company, and were not authorized to operate the hand car along the track. There is no dispute about what car it was that was being operated that night, and there is no testimony whatever that the servants of the company had anything to do with it. The car belonged, according to the undisputed evidence,

to some engineers who were superintending the work of a levee district or drainage district. They bought the car for use over a log road operated by the Desha Lumber Company, and had permission to do so. There is no proof that they were ever given permission to use the car on the tracks of the defendant company. On the day in question a crowd came over from Warren to Arkansas City to play a ball game, and late in the afternoon some one took the hand car in question from the tracks of the Desha Lumber Company and carried it over to the tracks of the defendant company for the purpose of transporting some of the ball players back to McGehee that night in time to catch a train over the main line. There is no proof whatever that any servant of the defendant company participated in this movement, or knew anything about it. The testimony shows that Doctor McCammon, the company's surgeon, was there at his residence near the track when the car was loaded and left Arkansas City, and that he undertook to give directions about the operation of the car. He states that what he did was only a friendly act to the engineers who were acquaintances of his, and that when he saw that the car was about to be overloaded to the extent that it was likely to break down, he directed some of the men to get öff in order to lighten the load. It is not contended that he had any authority to act for the company, and there is no evidence that he did have any such authority. It is not shown who was at the head of the movement to use the car, but there was an entire absence of any evidence to connect any servant of the company with it.

Plaintiff undertook, however, to show that there was a general custom, whereby any person with a hand car was allowed to operate it along this track. Some testimony was introduced to the effect that it was customary for hand cars to be operated for the purpose of transporting passengers from Arkansas City and other points to McGehee, and the case was submitted to the jury upon the theory that if such a custom existed, those who operated the car were doing so under license from the com-

pany, and that the latter would be responsible for their negligent act which caused injury to persons rightfully on the track.

The testimony is, perhaps, sufficient to show that it was customary for persons to be transported over the track on hand cars, but the testimony falls short of proving that there was any general custom whereby a license was extended to all persons to operate hand cars along the track. Nor was there any testimony either that this hand car was ever operated over defendant's track before this instance or that the persons who operated the car on this occasion were ever authorized to operate the hand car on defendant's track. The fact that hand cars were frequently operated for the purpose of transporting passengers does not show a general custom to permit any person who saw fit to operate a hand car and to confer a license to do so, so as to make the company responsible for the negligent acts of all persons who might see fit to accept the license.

The defendant introduced as witnesses its servants and officials in charge of that department to show that they never permitted any person to operate a hand car, and numerous instances are given in the testimony where persons were observed using hand cars, and were prevented from doing so. It was also shown by undisputed testimony that the section foreman never permitted his car to be used by other persons, and that he had nothing to do with the operation of the car which caused the injury, nor had any knowledge that it was being operated on that occasion. There is some proof that one, or, perhaps, two, of the men who ran the hand car were regular section hands; but this was on Sunday, when they were off duty, and not working for the company.

There is no presumption of negligence in this case, and the burden rested upon the plaintiff to make out his case by showing a state of facts which renders the company liable for the damages which he sustained.

In order to make the company liable for the negligence of those operating the hand car, authority to oper-

ate the car must be shown, either by proof that they were servants of the company, or were authorized to operate the hand car, or that there existed a custom of such a general nature as was sufficient to extend the privilege of operating hand cars to every person who might see fit to do so. Proof merely that persons occasionally operated hand cars, with or without authority, is not sufficient to establish the essential facts in this case, for, "in order to make the company liable, there must be proof, not only of the custom, but that it was actually known by the officials who conducted the affairs of the railway company, or that it was so general and of such long continuance that it must be fairly inferred that it was known and assented to by them." *St. Louis, I. M. & S. Ry. Co. v. Jones,* 96 Ark. 558.

Our conclusion, therefore, is that the evidence does not sustain the verdict, and for that reason the judgment is reversed and the cause remanded for a new trial.

