SOUTHERN ELECTRICAL CORPORATION, INC., *v.* ASHLEY-CHICOT ELECTRIC CO-OP, INC.

4-9855                                                   251 S. W. 2d 813

Opinion delivered October 6, 1952.

Rehearing denied November 10, 1952.

*Johnson & Peppard* and *Bridges, Bridges, Young & Gregory* and *John Harris Jones* for appellant.

*Y. W. Etheridge* for appellee.

WARD, J. Appellant, the Southern Electrical Corporation, Inc., is engaged in selling, among other things, materials such as cables and accessories for electrical installation, and appellee, the Ashley-Chicot Electrical Co-operative, Inc., is engaged in furnishing electricity to homes in the counties indicated by its name. This suit was brought in the Circuit Court of Ashley County by appellant to recover the sum of $2,406.32. After the introduction of all the evidence both sides asked for an instructed verdict, whereupon the Court, sitting as a jury, found in favor of appellee, hence this appeal.

An outline of the facts and circumstances out of which the litigation arose is as follows: On December 29, 1948, Pentecost, who at that time was and for several years previously had been manager of appellee, ordered from appellant, at a price agreed on between the two, a quantity of conductor or cable including accessories. On January 11, 1949, this order was shipped by appellant, under invoice number 3723 which referred to appellee's order number 00035, it was received by appellee in due course, and it was paid for in full on the 20th by

company check in the amount of $11,374.60. Following this, other shipments were made and paid for in like manner. One such shipment of material, which precipitated this controversy, was made on May 6, 1949, amounting to $8,519.69, which is not questioned in any way by appellee, but on May 13th its board of directors instructed its new manager [who had replaced Pentecost] to deduct the amount of $2,406.32 and to remit only $6,113.37, all of which was done that same day. Appellant refused to accept the check as payment in full and brought suit as stated above.

Appellee's reason for withholding payment of the balance of $2,406.32 due on the May 6th shipment involves the issues in this suit. It is contended by appellee that this amount was overpaid on the shipment first made on January 11th; that its manager, Pentecost, had no authority to make full payment on the first shipment; and that the excess charge for the conductor made by appellant was in violation of a written contract governing the price, which contract was entered into by both parties prior thereto and to which contract the Rural Electrification Association was also a party.

The lower Court, sitting as a jury, in refusing recovery to appellant, based its holding, in a short statement, on the ground that such a price contract was entered into on December 17, 1947, that appellant knew it was bound by it, and that both parties tried in vain to get the R.E.A. to change it.

Appellant makes several contentions among which are: that the first shipment was made on a purchase order and not under the contract; that the amount of the order was such that it could be made without the approval of the R.E.A.; that this order did not come under the contracts because they had been cancelled or fulfilled; and that the Court erred in taking the case from the jury because appellant asked other instructions in addition to the one for an instructed verdict. All of these contentions were controverted by appellee, but because of the view we later take it is not necessary to dis-

cuss or decide these issues. In fact, for the purpose of this opinion, they may all be resolved in favor of appellee.

In our opinion the lower Court erred in refusing to instruct a verdict for appellant. Our reasons for this conclusion follow.

Conceding there was a written contract between the parties governing the price of materials, they still had a right to change that contract by mutual agreement. All the evidence shows that the contract was changed in this instance by agreement between appellant, on the one hand, and Pentecost, as manager of appellee, on the other hand. It is insisted by appellee, however, that Pentecost had no authority to agree to such a change. We see no merit in this contention. The well-established rule by which we must be guided here is briefly stated in *Chalmers & Son* v. *Bowen,* 112 Ark. 63, 164 S. W. 1131, from which opinion we quote:

"A principal is not only bound by the acts of the agent done under express authority, but he is also bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized by the principal or not, and even if they are contrary to express directions. The principal in such case is not only bound by the authority actually given to the general agent, but by the authority which the third person dealing with him has a right to believe has been given to him."

As we view the record there is no evidence to show that Pentecost was not acting "within the apparent scope of his authority" when he agreed, on behalf of appellee, to the change in price, but there is abundant evidence to show he was so acting. Without encumbering this opinion by detailing the evidence, it is deemed sufficient to point out: that Pentecost had been the manager for several years, clothed with full apparent authority it transact business of this same character for appellee; he had formerly made similar purchases from appellant; he wrote checks on his company and none was turned down; and his transactions were only supervised by the board of directors meeting for an hour or two each month, at

which time they scarcely, if ever, made any objections or even checked over his records.

Appellee argues that since the R.E.A. was also a party to the contract [a fact known to appellant] Pentecost had no authority to agree to a change in the absence of the R.E.A.'s approval. This argument is untenable in view of the fact that R.E.A. is not a party to this suit and no attempt is made to show it was in any way damaged.

In addition to what we have already said, even if it were not clearly shown that Pentecost had apparent authority to bind appellee in this instance, we are convinced from the uncontradicted evidence that the sale was ratified both by the actions and the lack of action on the part of the board of directors. In this connection the evidence shows that at least one of the directors knew the terms and conditions of the transaction before shipment was made; that full payment by check signed by Pentecost and one director was made on January 20th; that the material was accepted by and used to the advantage of appellee; that the board of directors met [with Pentecost] and had opportunity to raise objections in February, March and April, but it failed to do so. The first attempt by the directors to disavow the validity of the January 11th purchase and escape payment of the full purchase price was on May 13, 1949, as earlier indicated. All this we think constituted a ratification. Appellee's own testimony shows that it was benefited by the use of the material and was anxious to get it at the time notwithstanding the advance in price. The rule governing ratification is well established. It is stated in 2 C. J. at p. 488 and in *Cleburne County Bank* v. *Butler Gin Co.*, 184 Ark. 503, 42 S. W. 2d 769.

For the reasons stated and since there is no dispute over the amount in controversy, the judgment of the lower Court is reversed and remanded to the trial Court

with directions to enter judgment in favor of appellant in the amount sued for.

Justice McFADDIN dissents in part.

Justice MILLWEE dissents.

Justice GEORGE ROSE SMITH concurs.

GEORGE ROSE SMITH, J. (concurring). It seems to me that the testimony as to Pentecost's apparent authority presented a question for the jury, so that we ought not to direct that a judgment be entered for the appellant. I think, however, that the trial court erred in excluding evidence offered by the plaintiff to show that Pentecost had on other occasions executed similar contracts on behalf of the defendant. Such evidence would have tended to show Pentecost's apparent authority to act for the defendant in this instance. Rest., Agency, § 43 (2). Hence I would reverse and remand for a new trial.

ED. F. McFADDIN, J. (dissenting). My study of this case leads me to these conclusions:

(1) Under the testimony, the issues as to novation and ratification were questions of fact which should have been submitted to the jury.

(2) The Southern Electrical Corporation not only asked for an instructed verdict, but also asked for several other instructions. These other instructions were not withdrawn and are in the record before us. The trial court said that it considered the other instructions withdrawn; but the attorneys never so stated, and there was an exception to the court's ruling in this regard. So, we have a case in which the plaintiff asked for an instructed verdict and also asked other instructions; and, therefore, the court had no right to take the case from the jury if a question of fact was made on novation or ratification.

Under such state of the record, it is my view that the trial court should have submitted the entire controversy to the jury. We should, therefore, reverse the judgment and remand the cause to the trial court for a jury to decide the disputed issues of fact.

Because the majority has rendered judgment rather than remanded the cause, I respectfully dissent.