ARKANSAS VALLEY FEED MILLS,
INC., Plaintiff,

v.

FOX DE LUXE FOODS, INC., Defendant.

Civ. A. No. 1392.

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 14, 1958.

Williams & Gardner, Russellville, Ark., for plaintiff.

Crouch, Jones & Blair, Springdale, Ark., for defendant.

JOHN E. MILLER, District Judge.

The court has before it for consideration defendant's motion for summary judgment. First to be determined is the question of whether there is a genuine issue as to any material fact, and if there is no genuine issue of fact, whether defendant is entitled to a judgment in its favor as a matter of law. Rule 56, Fed. Rules Civ.Proc., 28 U.S.C.A. To make this determination the court must give consideration to the entire record in the case as it now stands.

In its complaint, plaintiff, among other things, alleges:

"II

"That on the 14th day of December, 1953, Plaintiff and Defendant entered into a contract whereby the Defendant agreed to purchase from the Plaintiff fifty thousand (50,000) chickens each week, commencing on the 4th day of January, 1954, and continuing for a period of fifty two (52) consecutive weeks thereafter. A copy of said contract is attached hereto and made a part hereof as though set out in full.

"III

"That between the 4th day of January, 1954, and the 24th day of July, 1954, the Defendant defaulted in the amount of Seventy Two Thousand Three Hundred Forty Nine and 41/100 Dollars ($72,349.41) in making remittance to the Plaintiff pursuant to the terms and conditions embodied in said contract attached hereto.

"IV

"That from the 24th day of July, 1954, until the 3rd day of January, 1955, the Defendant defaulted entirely in carrying out the terms and conditions of said contract and the Plaintiff is entitled to invoke the forfeiture clause as set out in Paragraph IV of said contract, and pursuant to said paragraph, the Plaintiff is entitled to recover of and from the Defendant for said period the sum of One Hundred Thirty Thousand Seven Hundred Forty Three and 74/100 Dollars ($130,-743.74)."

Plaintiff seeks judgment against the defendant in the sum of $203,093.15.

In its answer defendant admits entering into the contract of December 14, 1953, but alleges:

" * * * that on or about the 2nd day of August, 1954, by mutual agreement the parties hereto made and entered into an agreement cancelling the contract referred to in Paragraph 2 of plaintiff's complaint, and by said cancellation agreement released each other from all sums of money, accounts, actions and claims and demands that either party might have against the other, except an indebtedness owed at that time by the plaintiff to the defendant, by reason of adjustments of the paying prices specified in the agreement of December 14, 1953, which amount was to be ascertained and adjusted between the parties, but that the cancellation of said contract was to be in full force and effect from the date thereof, irrespective of said adjustment. That since the cancellation of said contract, said indebtedness has been paid by the plaintiff to the defendant. That a true and correct copy of said Cancellation Agreement is hereto attached, marked 'Exhibit A', and made a part hereof as though set out herein word for word, the original being held by the defendant subject to the inspection of the parties and the orders of this Court."

The Cancellation Agreement of August 2, 1954, reads as follows:

"Cancellation Agreement

"Whereas, under date of December 14, 1953, a written agreement was entered into between Fox De Luxe Foods, Inc. of Chicago, Illinois, and Arkansas Valley Feed Mills, Inc. of Dardanelle, Arkansas, wherein and whereby said Fox De Luxe Foods, Inc. agreed to buy from Arkansas Valley Feed Mills, Inc. and the latter agreed to sell 50,000 head of chickens each week, commencing January 4, 1954, for a period of fifty-two consecutive weeks thereafter on the stipulations, covenants and agreements in said agreement contained; and

"Whereas, the parties hereto have agreed to cancel said contract effective the day and date hereof.

"Now, Therefore, the parties hereto agree to and do hereby so cancel said agreement dated December 14, 1953, and in pursuance of this agreement of cancellation and of One Dollar in hand paid, one to the other, receipt whereof is hereby acknowledged, the said parties each do hereby release the other, their successors and assigns, from all sums of money, accounts, actions, claims and demands up to the date and execution of these presents, excepting an indebtedness now owed by said Arkansas Valley Feed Mills, Inc. to said Fox De Luxe Foods, Inc., by reason of adjustments of the paying prices specified in said agreement of December 14, 1953, in an amount to be ascertained and adjusted by the parties hereto. It is understood, however, that this cancellation shall be in full force and effect from the date hereof regardless of said adjustment.

"Witness our hands and seals the 2nd day of August, 1954.

"Fox De Luxe Foods, Inc.
By /s/ F. W. Gergin      V.Pres.
Arkansas Valley Feed Mills, Inc.
By /s/ Harold Snyder    (Pres.)"

On May 24, 1958, the parties filed the deposition of Harold Snyder, President of plaintiff company, and on May 27, 1958, the defendant filed its motion for summary judgment on the basis of the pleadings and the deposition of Snyder.

On June 18, 1958, plaintiff filed its response to the motion for summary judgment.

On June 28, 1958, defendant, in support of its motion for summary judgment, filed the affidavit of Harold Neihouse, defendant's office manager,

Among other things, Neihouse states in the affidavit:

"That Valley Feed Co. is the retail feed division of Arkansas Valley Feed Mills, Inc., and that upon instructions from Arkansas Valley Feed Mills, Inc., all purchases of chickens under the contract of December 14, 1953, were made through Valley Feed Co. and all payments for such purchases were made to the said Valley Feed Co."

Neihouse further states in the affidavit that under the terms of the Cancellation Agreement of August 2, 1954, plaintiff was indebted to defendant in the sum of $1,315.63. Neihouse further states:

"That the above amount remained unpaid to Fox De Luxe Foods, Inc. and that on October 1, 1954, Fox De Luxe Foods, Inc. was indebted to Valley Feed Co. for chickens purchased subsequent to the cancellation agreement dated August 2, 1954, in the amount of $3861.53, and that from said indebtedness Fox De Luxe Foods, Inc. deducted the amount of $1315.63 from its check given in payment of such purchases.

"That in issuing its check for said purchases, Fox De Luxe Foods, Inc. furnished to Valley Feed Co. a stub attached to said check listing the deductions made by Fox De Luxe Foods, Inc. That a photostatic copy of said check issued October 1, 1954, being check No. 1392, will be forwarded to the Court to be attached as Exhibit A to this affidavit.

"That in addition to furnishing the said Valley Feed Co. with the information on said check, Fox De Luxe Foods, Inc. also furnished said company a statement showing the basis upon which it arrived at the adjustment indebtedness due it by the Arkansas Valley Feed Mills, Inc. pursuant to the terms of said contract of December 14, 1953. A photostatic copy of said statement is attached hereto as Exhibit B to this affidavit.

"That also attached hereto is a photostatic copy of the carbon copy of check No. 1392 as issued to Valley Feed Co., marked Exhibit C to this affidavit.

"That the adjustment figure of $1315.63 discharged all sums due Fox De Luxe Foods, Inc. in any manner arising out of said contract dated December 14, 1953.

"That no demand was ever made upon Fox De Luxe Foods, Inc. by the Arkansas Valley Feed Mills, Inc. for the payment of said sum, and that no one ever questioned said deduction, and that said check was accepted and presented for payment and duly paid upon presentation."

On July 10, 1958, plaintiff, in opposition to the motion for summary judgment, filed the affidavit of Harold Snyder, plaintiff's President.

Attached to the affidavit is a letter dated October 20, 1954, from Snyder to Mr. Earl Wise, Fox De Luxe Foods, Inc., in which Snyder stated:

"Please accept this as notice that we expect you to comply with all provisions of our agreement.

"If this is not done we regret very much to say that we will be forced to turn the whole matter over to our Attorney."

Also attached to the affidavit is a letter of October 27, 1954, from the law firm of Healy, Newby, Cessna & Healy to Snyder, stating that the original agreement of December 14, 1953, was cancelled by the agreement of August 2, 1954, and thus the December 14 agreement was no longer in effect.

In his deposition Snyder testified that he was President of the plaintiff corporation; that he signed the Cancellation Agreement upon the oral promise of defendant's President, Mike Fox, "to quit buying on grade and to buy all of our chickens as we offered them"; that defendant did not keep this oral agreement, and plaintiff considered the Cancellation Agreement to be ineffective.

With regard to his authority to execute the Cancellation Agreement, Snyder testified that at the time said Agreement was executed, he owned 450 of the 1,000 shares of stock issued by the corporation; that he managed and operated the corporation "within limits", but that he had no authority to contract for the corporation and never entered into any contract for the corporation without specific approval; that he had no approval of the corporation to execute the Cancellation Agreement and that the only reason he signed it was because he considered it only a memorandum agreement which was to be executed later; that at the present time he owns about 94 percent of the stock and makes the major policies and decisions for the company, but that he did not do so at the time the Cancellation Agreement was executed.

As to the possible ratification of the Cancellation Agreement by the plaintiff corporation, Snyder testified that the corporation had never made any payments to defendant pursuant to the terms of the Cancellation Agreement.

It is defendant's contention that there is no genuine issue of fact; that Snyder had the authority to execute the Cancellation Agreement, or in any event that it was ratified by the corporation; and that parol evidence is inadmissible to vary or contradict the terms of said Cancellation Agreement.

Plaintiff on the other hand contends that there is a genuine issue of fact as to whether Snyder had authority to execute the Cancellation Agreement, and as to whether the Agreement was ratified by plaintiff corporation. Plaintiff further contends that parol evidence is admissible to show the true consideration for the execution of the Cancellation Agreement and to show that the consideration has failed.

The court will first consider the question of whether there is any genuine issue of fact as to the authority of Snyder to execute the Cancellation Agreement, and as to the alleged ratification of the

Agreement by the corporation. It has been stated in City Electric Street R. Co. v. First National Exchange Bank, 62 Ark. 33, 37, 41, 34 S.W. 89, 90, 31 L.R.A. 535, that:

"Where the authority of the president and secretary to bind the corporation is challenged, as it has been by the answer in this case, that authority should be shown by the proof, and not be presumed as a matter of law.

\* \* \* \* \* \*

"* * * Our statute for the incorporation of business corporations expressly confers the management of their business affairs upon 'not less than three directors.' * * * From the above provisions it appears that the president and secretary of corporations are not general agents. Whatever power they may have to act for the corporation at all in business matters must be delegated and special."

See, also, Morning Star Mining Co. v. Bennett, 164 Ark. 244, 261 S.W. 639; Anderson-Tully Co. v. Gillett Lbr. Co., 155 Ark. 224, 244 S.W. 26; Bloch Queensware Co. v. Metzger, 70 Ark. 232, 65 S.W. 929; 13 Am.Jur., Corporations, Sec. 897.

It is clear from the above authorities that Snyder did not have the authority, merely by virtue of being president of the corporation, to execute the Cancellation Agreement. However, defendant contends that Snyder was the active manager of the business, and therefore had the necessary authority. Defendant relies upon the cases of J. H. Phipps Lbr. Co. v. Omaha Hardware Lbr. Co., D.C. W.D.Ark., 40 F.Supp. 723, reversed in 8 Cir., 135 F.2d 3; and Southern Electrical Corp., Inc., v. Ashley-Chicot Electric Co-Op, Inc., 220 Ark. 940, 251 S.W. 2d 813, 252 S.W.2d 411. In the latter case the court, beginning at page 943 of 220 Ark., at page 814 of 251 S.W.2d, said:

"Conceding there was a written contract between the parties governing the price of materials, they still

had a right to change that contract by mutual agreement. All the evidence shows that the contract was changed in this instance by agreement between appellant, on the one hand, and Pentecost, as manager of appellee, on the other hand. It is insisted by appellee, however, that Pentecost had no authority to agree to such a change. We see no merit in this contention. The well-established rule by which we must be guided here is briefly stated in Chalmers & Son v. Bowen, 112 Ark. 63, 164 S.W. 1131, 1133, from which opinion we quote:

" 'A principal is not only bound by the acts of the agent done under express authority, but he is also bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized by the principal or not, and even if they are contrary to express directions. The principal in such case is not only bound by the authority actually given to the general agent, but by the authority which the third person dealing with him has a right to believe has been given to him.'

"As we view the record there is no evidence to show that Pentecost was not acting 'within the apparent scope of his authority' when he agreed, on behalf of appellee, to the change in price, but there is abundant evidence to show he was so acting. Without encumbering this opinion by detailing the evidence, it is deemed sufficient to point out: that Pentecost had been the manager for several years, clothed with full apparent authority to transact business of this same character for appellee; he had formerly made similar purchases from appellant; he wrote checks on his company and none was turned down; and his transactions were only supervised by the board of directors meeting for an hour or two each month, at which time they scarcely, if ever, made any objections or even checked over his records."

In the instant case the court is of the opinion that there remains a genuine issue of fact as to whether Snyder had real or apparent authority to execute the Cancellation Agreement. As heretofore stated, in the deposition Snyder testified that he managed the corporation "within limits", but that he had no authority to contract for the corporation and had never entered into a contract for the corporation without specific approval (p. 24 of deposition). He also testified that at the time of the Cancellation Agreement he did not make the major policies and decisions for the company (p. 29 of deposition). In view of this positive testimony the court cannot say as a matter of law that Snyder had either real or apparent authority to execute the Cancellation Agreement.

The same thing is true with regard to the question of ratification of the Cancellation Agreement by the corporation. Defendant contends that the corporation paid the amount called for in the Cancellation Agreement, and thereby ratified said Agreement. However, Snyder testified positively that plaintiff made no payments to defendant under the Cancellation Agreement (p. 20 of deposition). And in his affidavit, Snyder states that Valley Feed Company is an Arkansas corporation and is not a retail feed division of plaintiff, Arkansas Valley Feed Mills, Inc. This is in direct conflict with the affidavit of defendant's office manager, Harold Neihouse, who stated that Valley Feed Company was the retail feed division of plaintiff, Arkansas Valley Feed Mills, Inc., and that upon instructions from plaintiff all payments for chickens under the December 14, 1953, agreement were made to Valley Feed Company.

Under these circumstances the court cannot say, as a matter of law, that the cashing of the check by Valley Feed Company (from which had been deducted the amount allegedly due defendant from plaintiff under the Cancellation Agree-

ment) amounted to a ratification of the Agreement by the plaintiff corporation.

Since there appears to be a genuine issue of fact as to whether Snyder had authority to execute the Cancellation Agreement, and whether the Agreement was ratified by plaintiff corporation, the court should not enter a summary judgment in favor of the defendant.

The conclusion of the court on this issue makes it unnecessary to determine at this time whether parol evidence would be admissible in the consideration of the effect of the Cancellation Agreement.

From the above it follows that defendant's motion for summary judgment should be overruled, and an order to that effect should be entered.