**ARKANSAS VALLEY FEED MILLS, INC., Appellant,**

v.

**FOX DE LUXE FOODS, INC., Appellee.**

**No. 16263.**

United States Court of Appeals
Eighth Circuit.
Jan. 22, 1960.

---

Robert Hays Williams, Russellville, Ark., for appellant.

Courtney C. Crouch, Springdale, Ark., for appellee.

Before SANBORN, VAN OOSTER-HOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff Arkansas Valley Feed Mills, Inc., (hereinafter called Mills), from final judgment dismissing its complaint against Fox DeLuxe Foods, Inc., (hereinafter called Fox).

Jurisdiction based upon diversity of citizenship and the requisite amount is established.

Mills in its complaint filed December 31, 1957, seeks damages from Fox for breach of written contract dated December 14, 1953, effective for the year 1954, wherein Fox agreed to purchase and Mills agreed to sell 50,000 chickens per week. The contract provides that the chickens shall have an average weight of from 2.75 to 3 pounds per head and shall be well fleshed, well feathered, healthy, and No. 1 as based on current average quality. The contract contains a formula for determining the price to be paid for the chickens which is based in part on the Chicago Board of Trade quotation for corn and soybean meal and also fixes a

penalty to be paid by any party defaulting upon the contract.[1]

Fox, in its answer, admitted entering into the contract sued upon but denied any breach of the contract, asserting that the contracting parties by mutual agreement on August 2, 1954, entered into a written cancellation agreement whereby each party agreed to the cancellation of the contract sued upon, effective August 2, 1954, and each party released the other "from all sums of money, accounts, actions, claims and demands up to the date of the execution of these presents." [2]

Differences arose between Mills and Fox with reference to the interpretation of the December 14, 1953, contract. Fox claimed that the chickens delivered did not meet the contract requirements and deducted penalties it claimed that it was entitled to deduct by the contract. Mills contended the chickens delivered met specifications, and that in any event no penalty could be imposed.

Harold Snyder, President and General Manager of Mills, with the knowledge of Mills' Directors, went to Chicago and conferred on August 2, 1954, with Fox officials in an effort to adjust their difficulties. No progress was made in the negotiations. Snyder proposed that the contract be cancelled, Fox agreed, and the written cancellation agreement hereinabove referred to was drawn up and signed on behalf of Mills by Harold Snyder as President. This cancellation agreement, as introduced in evidence, bears the signature of R. N. Gergen, Vice-President, in behalf of Fox.

Mills' primary contention in the trial court was that Snyder had no authority to execute the cancellation agreement and that Mills had not ratified Snyder's execution of such agreement.

The issues were first considered by the trial court upon Fox's motion for summary judgment. The court denied summary judgment upon the basis that there was a genuine issue of fact as to the authority of Harold Snyder to execute the cancellation agreement and on the ratification issue.. The court's memorandum opinion denying summary judgment is reported at D.C., 163 F.Supp. 759.

By order of the trial court, acquiesced in by the parties, this case was tried to the court without a jury upon the issue of whether the cancellation agreement of August 2, 1954, was valid and effective. The court stated that in the event the court found that Snyder had no authority to execute the cancellation agreement and that the agreement had not been ratified by Mills, a further hearing would be held to determine the amount of damages, if any.

The trial court in a well considered memorandum opinion, reported in 171 F.Supp. 145, found Mills was bound by the cancellation agreement. The court in its opinion fully states the pertinent facts and thoroughly discusses the applicable law. Judgment was entered dismissing Mills' complaint.[3] Timely appeal was taken from this judgment.

The trial court determined that Mills was bound by the cancellation agreement signed by Snyder in its behalf for each of the following reasons: (1) Snyder had actual authority to sign the cancellation agreement; (2) Snyder had apparent authority to sign the cancellation agreement; (3) Mills ratified Sny-

1. The contract is set out in full in footnote numbered 2 to the trial court's opinion reported in 171 F.Supp. 145, 149.

2. The cancellation agreement is set out in full in 171 F.Supp. at page 151. The adjustment of an unsettled claim of Fox against Mills was excepted. Such claim has subsequently been settled. The last sentence of the agreement specifically provides: "It is understood, however, that this cancellation shall be in full

force and effect from the date hereof regardless of said adjustment."

3. The court also dismissed a third party complaint of Fox against Snyder individually in which Fox claimed damages against Snyder based on fraud in the event that it was determined Snyder had no authority to sign the cancellation agreement. No appeal is taken from such dismissal.

der's action in executing the cancellation agreement.

Mills contended that the court erred in arriving at each of the foregoing conclusions. If the court was right in any of the foregoing conclusions, Mills is bound by the cancellation agreement.

■ We shall first consider the question of whether the trial court erred in holding that Snyder had actual authority to sign the cancellation agreement. The trial court in his opinion states (at page 156 of 171 F.Supp.):

"The rule followed by the Supreme Court of Arkansas is that even absent specific authority contracts made on behalf of a corporation are binding upon that corporation when (a) executed by a general manager, and (b) deal with matters in the ordinary conduct of the corporate business."

This statement is supported by the court's quotations from Browne-Brun Wholesale Grocery Co. v. Hinton, 179 Ark. 831, 18 S.W.2d 369. Mills does not dispute the correctness of the rule of law above quoted.

There is substantial evidence to support the court's finding that Snyder was president and general manager of Mills at all times herein material. Such finding is not seriously disputed.

Mills does, however, urge that the signing of the cancellation agreement was not in the ordinary course of the corporate business. The court's finding that Snyder executed the cancellation agreement in the ordinary course of the corporation's business is supported by substantial evidence which is detailed in the trial court's opinion.

Additionally, the trial court states:

"Actual authority, of course, may exist because of express authority, either oral or written, delegated by the principal, in this case the corporation, or actual authority may derive from implication in the principal's words or deeds. See, Rest., Agency, Sec. 8d; cf. St. Louis, I.

M. & S. R. [Co]. v. Jones, 96 Ark. 558, 132 S.W. 636, 37 L.R.A.,N.S., 418. Implied authority in this sense is a species of actual authority; and unlike apparent authority does not rest upon any concepts of estoppel, but upon the fact that authority is actually granted even though by implication." [171 F.Supp. 157]

■ We agree that actual authority may be inferred or implied from circumstantial evidence tending to show that such authority was possessed by an officer or agent acting on behalf of his principal, although direct evidence of express authorization is lacking. There is substantial evidentiary support for the finding that Snyder had actual authority to execute the cancellation agreement. Snyder, who had been a vocational agriculture instructor, was one of the original incorporators of Mills in 1946. Snyder owned 50% of Mills' original stock. On the date that he executed the cancellation agreement he owned 71% of the stock and has subsequently acquired additional stock. In recent years Snyder has also held substantial interests in many business ventures and has apparently been generally successful in his business operations.

It is apparent that Snyder was a guiding force in conducting Mills' business and that he was given a free hand in the management of such business by Mills' directors. While Mills' bylaws provided for the annual election of seven directors, the provisions of the bylaws pertaining to the election of the directors were not strictly followed. There is some confusion in the record as to the membership of the board of directors on August 2, 1954. The trial court was justified in finding that on that date the membership of the board consisted of Snyder, Mrs. Lee Meek, Gretchen Goodier and Donald Barger. There is no evidence revealing the activities on the board of Mrs. Lee Meek, the widow of one of the original incorporators. Miss Goodier is a clerical employee owning one share of stock. Mr. Barger is

a banker who sold his modest block of stock to Snyder shortly after August 2, 1954. Barger testified, in part:

"Q. Who was the active Manager of the Arkansas Valley Feed Mills when you were on the Board? A. Mr. Snyder.

"Q. Was he charged with the responsibility of operating the business? A. Yes.

"Q. In other words, the Board held him out as the active manager of the business? A. That's right.

"Q. And you say that he negotiated contracts from time to time? A. He discussed the contracts and was authorized to negotiate them.

"Q. He was authorized to negotiate contracts from time to time. Did Mr. Snyder ever negotiate a contract that was not approved by the Board? A. I don't know.

"Q. Do you know of any time or any occasion where he negotiated a contract that the Board rejected the contract? A. No, sir.

"Q. On the occasion that you say you were notified—the Board was notified of this Cancellation Agreement, you say there was no action taken so far as you remember one way or the other? A. I don't recall any formal action being taken.

"Q. One way or the other? A. That's right.

"Q. You knew and the Board knew what Mr. Snyder had done? A. Yes.

"Q. In canceling the contract, Mr. Snyder advised you what he did when he was in Chicago. Is that correct? A. Yes, sir.

"Q. So you were fully aware? A. Yes, sir.

"Q. Mr. Barger, in all of the years that you were connected with this concern, no one else besides Mr. Snyder among the executive officers took an active part in the business.

I mean, you had other interests. You didn't spend any time in the operation of the business? A. No, sir."

We find no persuasive evidence tending to show the directors placed any restrictions upon Snyder's authority to conduct the corporate business. Board meetings were irregular. Although it is claimed that minutes of the board meetings were kept, most of the minutes were lost. The few sets of minutes produced show no limitation upon Snyder's authority. Oral testimony as to what transpired at directors' meetings is evasive, indefinite and unsatisfactory. All important business decisions appear to have been made by Snyder. All of the contractual negotiations between Fox and Mills were conducted by Snyder for Mills. The acquisition and sale of chickens was an important part of Mills' business and all major decisions in connection with such matters were made by Snyder.

We find nothing in the record to indicate that any stockholder or director other than Snyder has questioned Snyder's authority to manage Mills' business. The foregoing evidence with other evidence detailed in the trial court's opinion affords a substantial basis for the trial court's conclusion, reading:

"Plaintiff corporation did confer authority by implication by relying on Snyder to do all acts necessary to the operation of the business and in acquiescing to all of his acts."

We agree with the trial court that neither the articles of incorporation nor bylaws of Mills restrict in any way Snyder's authority as president and general manager to handle the transaction here involved.

This court has repeatedly held that findings of fact by a trial judge sitting without a jury should not be set aside unless it is clearly demonstrated that they are without adequate evidentiary support or induced by an erroneous

view of the law. Nelson v. Seaboard Surety Co., 8 Cir., 269 F.2d 882, 886; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 138.

We are convinced that the trial court's holding that Snyder had actual authority to sign the cancellation agreement is supported by substantial evidence and was not induced by any erroneous view of the law.

Our holding on the actual authority issue eliminates any necessity for the consideration of the apparent authority and ratification issues.

Mills' contention that the court erred in determining that there was no condition precedent to the operation of the cancellation agreement is without merit. The trial court, pursuant to Southern Wooden Box, Inc. v. Ozark Hardwood Manufacturing Co., 226 Ark. 899, 294 S.W.2d 761, permitted Mills to offer parol evidence as to the alleged condition precedent. The witnesses for Fox testified that no condition precedent was agreed upon and that the only agreement entered into was the written cancellation agreement.

In nonjury cases the responsibility for deciding doubtful questions of fact and determining the credibility of witnesses is upon the trial court. We find substantial evidentiary support for the trial court's fact finding, reading:

"No other agreements, written or oral, were entered into between the parties during Snyder's visit to Chicago, and no conditions were imposed precedent to the operation of the cancellation agreement."

On the question of failure of consideration for the cancellation agreement, Mills in its brief states:

"The question to be decided is, of course, whether or not there was substantial testimony to support the finding that the cancellation agreement was complete in itself and that all of the considerations or prom-

ises were contained in that written instrument."

The trial court's finding last above quoted adequately answers this contention.

Mills also contends that the cancellation agreement is an accord without satisfaction. The trial court in its opinion has properly demonstrated that the cancellation agreement is not an accord, but is a discharge or rescission of the original marketing agreement by mutual agreement.

One further matter requires brief consideration. Mills in its reply brief raises for the first time the issue that the cancellation agreement was not effective because it was never delivered. The cancellation agreement signed on behalf of both parties is complete on its face and was received in evidence without objection. The record and the trial court's opinion show that the defense of want of delivery was not raised or considered in the trial court. An appellant cannot for the first time, upon appeal, raise an issue that was not presented to or considered by the trial court. Hartford Accident & Indemnity Co. v. Shaw, 8 Cir., 273 F.2d 133; Gilby v. Travelers Insurance Co., 8 Cir., 248 F.2d 794, 797; Green v. Dingman 8 Cir., 234 F.2d 547, 550.

In any event, we are satisfied that the belated claim which Mills has attempted to raise in its reply brief lacks merit.

We conclude that the court was justified in finding that Snyder as president and general manager was authorized to sign the cancellation agreement on behalf of Mills, and in holding that there was no oral agreement established that the cancellation agreement was delivered upon any condition precedent, or that the consideration for the agreement was other than that set out in the agreement itself.

The court properly dismissed Mills' complaint. The judgment appealed from is affirmed.